EGI-VSR, LLC v. Juan Carlos Celestin Mitjans Good morning, and may it please the Court. Christopher King, Homer Bonner on behalf of the appellant, Juan Koturch. This case falls within an established line of authority that holds that when an arbitrator makes a determination of liability but does not fix the relief, then we have a non-final award, and the district court does not have authority to review that decision. And that is exactly what happened in this case. We had an arbitrator, this is an arbitration that took place in Chile, and the arbitrator made a determination that the petitioner in this case, EGI, had the ability to enforce a put right under Section 10 of the Shareholders Agreement, forcing my client and nine other people to buy their shares in a Chilean wine company. The arbitrator did not, however, fix the purchase price. It seems like he did. I mean, he just applied the formula that was in the contract. Why isn't that sufficient? I mean, does he have to actually go through and do the specific math? If he explains how to get there and he's showing his work, what difference does it make? Well, it makes a big difference for this reason. What the arbitrator did was take language from Section 10 of the Arbitration Agreement and paste it in there. There are a lot of unknown variables in terms of how we do that. We need a starting point to do this math. We need to understand what is the currency we're going to use? When are we going to? I mean, it seems like it's from all of this seems to be discernible from the contract and from the arbitrator's decision. I'm not seeing why there's any uncertainty here. Well, there is uncertainty because we have disputes with EGI on what currency do you use. They chose U.S. dollars. Now, you talked about the Arbitration Award. You can look at the shareholder's agreement as well. In none of those pages will you find any reference to U.S. dollars. This was a Chilean wine company. It was purchased in pesos. If you choose a U.S. dollar currency and you convert it to U.S. dollars as they did ten days after the Arbitration Award, we think that's not consistent with the Arbitration Award. It's not consistent with our agreement. These are all issues for the arbitrator to decide. The arbitrator did not give us the guidance. The information is not there in the Arbitration Award for us to do this math. This goes to the other issue that we think this case falls squarely within the application of the Supreme Court's decision this year in Schein, which is there are no circumstances where a district court has the ability to delve into the merits of an arbitrable dispute. When we're talking about calculating a purchase price on a put right, that is arbitrable. No one disputes in this case that that is an arbitrable dispute. And so under Schein, even if you think that our argument is wholly groundless, even if you think, as I understand your question, the answer is obvious, it is still an issue for the arbitrator to decide. And if it was such a simple formula, we would have this in the Arbitration Award. The arbitrator would have done the math. Instead, what happened was we didn't see any calculations for three years. What EGI elected to do was to take their calculations and bring them over here in the Southern District of Florida, attach them to a petition to confirm an Arbitration Award, and ask the district court to do the math. And that's the problem that we have. We wouldn't be having this dispute at all, for example, if EGI had originally submitted this dispute or their calculations to the arbitrator. Well, let me ask you something. I mean, it seems to me that with respect to dollars or Chilean money, that it doesn't really make a difference as long as everybody agrees, as long as, whether you agree or not, whether it's clear under the arbitration order and under the law, what the conversion date is. Would you agree with that? Well, no, because you would need, I think, three things that we would have to agree on. We'd have to agree on what is the currency, when are we going to do the conversion date, which we have a dispute with them over that. So far, those two things are in my hypothetical. Yes, okay. And how do you calculate interest? They did not calculate... Interest is a different issue, right? Interest is a different issue from whether the value is wrong because it was issued in dollars versus Chilean money, right? If there is a determinable date on which the conversion would occur, and if we have an agreement as to, or if we find there was an agreement and a decision as to what the value of the judgment should have been, then it doesn't matter whether it's issued in Chilean money or in dollars, right? As long as we're in agreement on the date of conversion. If you, well, the only way we would be in agreement is if that date of conversion in your hypothetical is at the inception, but that's not what they did. Well, so what I'm saying is agreement's probably not the right word. If we conclude that the law requires conversion is a specific date, whether it's breach date or date of judgment, right? So if we're able to determine that, we don't need to send it back to figure out what the dollar amount should be just because it's in dollars instead of Chilean money, do we? Well, here's why I think that you do, because this is an arbitrable dispute, and it goes to my issue. Wait a minute. Why not so? Why is it what Judge Rosenbaum said so? Well, I, because it is an arbitrable dispute. Well, I mean, you know, if you know what the date of the conversion is, then you have the money frozen regardless of whether it's Chilean money or dollars. Do you agree with that? Right, well, under your hypothesis. And then you just calculate the exchange rate. Isn't that what you do? If that's so. If we agreed on the currency and we agreed on the conversion date. Well, whichever currency is still converting, do you agree? I, yes, at some point you do have to convert. We do need a conversion to a currency. Okay, thank you. That's correct. But I, to answer your question, that instruction would have to come from the arbitrator, and it is not in this award. You mean the date of the conversion has to come? The date of the conversion. Unless, right, there is an accepted rule under the law that it's either, you know, date of breach or date of judgment or whatever the accepted rule might be. Well, we don't know, because remember the law here that would apply would be Chilean law. This is not the law of the United States. This was a foreign arbitration award, and the controlling law under our shareholders' agreement and under the arbitration was Chilean law. So there is not, to my knowledge, a specific rule under Chilean law about the date of conversion. And if there was, that would be another issue we would say is for the arbitrator to decide. There's another factor here, which is the district court. Don't we have case law on when we're converting an award, a foreign award, isn't there case law on whether it should be date of breach or date of judgment? Well, yes, there's case law on that. When you're talking about a money judgment, this was not a money judgment. This was an order of specific performance. And you can look at the specific language in... Specific performance effectively turns out to require sale on a certain date, right? So why wouldn't we just apply the same rules that we would apply for a money judgment? Because those rules don't apply when we have a shareholders' agreement that requires a purchase we maintain in pesos. Now, it may be strange that we're here in Appellate Court talking about a purchase in Chilean pesos, but this was a Chilean wine company. And this is what the shareholders' agreement provided. I think that you would be right... Are you suggesting that the date of the obligation to pay is somewhere off in the future, after the arbitration is over with? Well, the arbitration... Do you have to have another proceeding? Yes, I... Another proceeding? We think that that's what... What utility would there be in that? Well, we would know what the purchase price is. We would know what... The arbitrator said you had to buy it. Here's the breach. Boom. Yes. And what you're saying is you can then argue forever about when is it that you have to comply. No, no, not forever. I think... All right, how long? Five years? No, no. Three? No. Two? The arbitration agreement... Where in the spectrum? Ten days, it said. Ten days? That's right. Okay. But... You can determine what the price is in ten days? Yeah. The exchange rate? That's right. Okay. But that's not what happened. You want to buy ten days? Is that what you're saying? No, no, no. We want to arbitrate the price of the put right. And I think that that is what we agreed to. That is what we bargained for. And instead of the parties coming together and having a conversation about the purchase price, what ended up happening is three years went by and they took that controversy here and we say this was a dispute that should have been resolved and still should... Somewhere within ten days? Well, the ten days are long gone. Well, I mean, we're back to infinity. It doesn't have to be infinity. Well, it is in this case according to you, as I see it. No, no, Judge. Well, you're going to go back and what is the arbitrator going to decide? The arbitrator is going to decide how do we compute these numbers? How do we come up with a final arbitration award? And in order to do that... As of some date that he's going to pick out? No, we have the dates. What we don't have is what is the currency and when is the conversion rate. Those are arbitrable disputes. This is not a question of... Don't you know what the currency is on a given date? Well, we... Of course you do. Yes, yes. Okay. And we have the dates, but... We have disagreements with them about how we do this. I think we understand your point and you saved some rebuttal time. Thank you, Judge. Mr. Vail. Good morning. Andrew Vail on behalf of Appellee EGI VSR or EGI. I have with me this morning at council table my co-counsel, Dwayne Robinson and Deitra Shaw Wilder. May it please the court. In this court, appellant continues his attempt to avoid an obligation to pay EGI, contending that Judge Scola committed reversible error in confirming a final award issued by a Chilean arbitrator in 2012. The Chilean arbitrator had found that the controlling shareholders, including appellant, had breached shareholder agreement with EGI and thereafter refused to honor EGI's put. Appellant was jointly and severally liable to pay EGI at the price formula set forth in the party's agreement and expressly recited in that award. Judge Scola found that the formula provides a clearly determinable amount that was to be paid to EGI, including by appellant as guarantor. Can I ask you a question? Yes. Yes, Judge Rosenbaum. So, technically, it does seem like it's an award for specific performance because it requires the purchase of the shares back. And so, besides having the appellants turn over the money to you, it would seem like your clients would have to turn over the shares to them, which requires specific performance. I just wanted to get your thoughts on that. Judge Rosenbaum, I don't believe so. If we step back to understand the context of this proceeding, as Judge Schoflat was touching on, where the parties were when they came to this arbitration. They already had in place a shareholder's agreement that provided that if appellants breached that agreement, my client was entitled to exercise a put right. A put right being that it put its shares out, it tendered pursuant to the party's agreement upon payment for those shares to no longer be owned by my client. They refused to honor that put. So, when they went to the arbitration, what my client sought was to be paid. And it's recited in the award. But you would agree that in order to be paid, your client has to turn over the shares? I would agree, Your Honor, that my client has, by the exercise of the put, put those shares over to be turned over in essence, which can happen in the traditional sense of a put by a company extinguishing the shares or them taking ownership. We've also been clear that if there's any necessity under Chilean law or process, which isn't part of the award here, for them to then do something additional that we've maintained, we've put in our papers, that EGI is in position and always been willing to do something more if required to effectuate his client paying for those shares so that transaction has been accomplished as ordered by the arbitrator. Does it make any difference to your position ultimately, the enforcement of the judgment, if we determine that it is a specific performance award by the arbitrator? I do think it makes a slight difference. I do agree, Your Honor, with your point this morning that the specific performance would simply order him to pay us as we're now here seeking. I think the only difference would be, I speak for myself, would be the mechanism of enforcement. Money judgment vis-a-vis specific performance. You're right in essence, Your Honor. What we'd have to do is we'd have to do this all over again. My impression is there is a day certain when it's to happen. Yes, there was. It is frozen in time, and whether or not, if they refused to perform, the consequence is the same as if it had been a money judgment. Otherwise, the doctrine of specific performance would be held hostage in effect. Your Honor. To the rule of law, basically. You could forever refuse to perform. Yes. Then at some point in time, a court says you got to perform. Well, maybe the money is worthless by this time. In essence, I think that's essentially what Appellant is attempting to do. Not only that, you would avoid interest payments in the interim. Arguably, although if specific performance and not a monetary award, the award requires the interest. If Chilean law said something like this, there's a difference between specific performance, money judgment. We're not going to calculate interest on specific performance until the defendant performs. Whenever that might be. And it starts running at that point in time. So that the remedy of specific performance is basically kind of empty compared to judgment for money. Agreed, Your Honor. And I think the arbitrator here and again... Chilean law may say that. It wouldn't say it around here. Not in any of the states as far as I'm concerned. Agree with your premise, Your Honor. And again, here, what happened was there was already an arbitration where the arbitrator award that they pay this money by a date certain. And they didn't do that. And so now we come to this court and they're saying, put us back in that place. Put us in the place again of asking us to pay an award that has a determinable calculable amount to be paid on the date which it's paid or the date which EGI used in fairness in being most fair to appellant. We use that date, that 10th date out that was set for in the award. And that's why when counsel argues that there are missing components here, that argument is wrong. Can I ask you a question again? I'm sorry that I'm a little stuck on this. But I just want to understand the mechanics. And I'm sorry that I'm asking about sort of tangible things. But it just would be helpful to me. You have said that when you exercise the put right, you sort of put your shares out there. Where are they? I mean, not that shares are. Where are the certificates physically? Or whatever whatever title there would be. Where is that physically located? I don't know that, Your Honor. What I do know is this, that Judge Skoula did ask appellate counsel at the lower court whether that was an issue. Whether the physical control of the shares was an issue in this case. That was an answer to the satisfaction of Judge Skoula. My understanding is again that my client has complied with its obligations by putting its puts out there. My understanding of this whole arrangement, put it in American terms, you made the put. The next issue was whether they breached. If they were found to have breached, the put by operation of law in effect conveys the interest to the other side and they've got to make the payment. That's in simple terms the way I look at it. You have just summarized it in a way I wish I could have for you, Judge Rosenbaum. That is exactly what I was trying to articulate. Related question. Let's assume that they make the payment. There's nothing more that needs to be done for them to have control of the shares. I don't know what happens between who them is. Mr. Kodich again is a guarantor of that payment on behalf of controlling shareholders. There's nothing more that you need to do for them to have control of the shares. Not pursuant to the strict terms of the arbitration award and that's why it is a money judgment. That award is saying pay them. Repeatedly says pay them the sum that's readily calculable above. Following up on Judge Rosenbaum's question, what happens if they're only capable of paying a portion of the sum? What happens then? What shares are conveyed back to the appellant through this put given that the shares were acquired at different values? How does it work? Yes, that's a good question, Your Honor. That if that was a concern that they had that they needed to raise with the arbitrator. Instead, they did not do that. Instead, we have an award that specifically and concretely tells them that they need to pay. He was a guarantor of that obligation. Under Chilean law, to answer Judge Pauli's question, would it not be the case that you would go to court and get a money judgment for the balance due? My understanding, Your Honor, if... Unless Chilean law had contempt power and you could put them in the pokey until they paid. I don't know. They couldn't do that here. Under American law here, you'd get a money judgment for the balance. You could not. Again, here what we have, an award that we're enforcing against a guarantor of a set amount that the award doesn't address the mechanics of how, if, and when, and finally, my client is made whole, what happens with those shares because this is an award for a monetary amount to my client. If they believe that once they've satisfied that obligation in full that my client has not honored or they have the puts back, they can go and seek remedies other places. It's not for the 11th Circuit to address... Even if the award has been specific and said they have to pay X dollars by a certain date and now you're here enforcing the award, the district court could not use its contempt power to make them pay. It would have to enter a money judgment. I speak for myself. That's my understanding of the law. You can't jail anybody on contempt power for debt. That's my understanding. That's basically what you were seeking here, as I understand it, was the enforcement of the award in the district court. Yes, we're seeking a confirmation of the award. Under international law, you get whatever remedy we provide. I'm sorry, go ahead and answer Judge Schoflat's question. Yes, Your Honor, this is an international award but once it's confirmed here, and this is where I think counsel is a little mistaken, once an international award is confirmed in the United States under the continental case that we cite and under the restatement of foreign laws, it's converted into U.S. dollars unless the claimant wants something different and that conversion is a function of U.S. law once that judgment is brought here to our federal courts and the date of that conversion is a function of U.S. law, not Chilean law as he suggested. If we affirm the district court, you still have to collect the money. Yes, we do, Your Honor. There's only two ways of collecting it. One is through writs of execution, guarding and the like, like a money judgment, and the other is by the court's contempt power. Yes, Your Honor. My impression is you couldn't do the latter. So basically, it's a money judgment on a certain date. Yes, Your Honor. At this point in time, from the district court, we have a money judgment. That is a subject based on the long 11th circuit. Judge Scola's determination of that is a determination of fact subject to review for clear error. He's entered an order. They have not stayed that order and we have now pursued payment of that money judgment and through alternative means, Your Honor. So just to follow up on Judge Pauly's question. Let's say that we affirm Judge Scola. This is the hypothetical. And so the award for $28 million plus is affirmed and the appellants realize they can only pay you a million dollars but they pay the million dollars. You still have no claim to the remaining shares that they haven't paid for. Is that what your position is? That my client still has no claim to the remaining shares? Because you've made the put. We've put the puts out there. Until they've made their obligation and hold, the shares are not tendered to them. The arbitrator did not address whether or not some of the respondents pay some amount and thus receive some of the award. And that's again why I think it's important to remember that what this is is a monetary award from the arbitrator. What he's saying, and we recited in our papers, specifically not specific performance he's specifically saying pay for these. The sum shall be paid. And again Mr. Korderich was standing as a guarantor of the controlling shareholders obligation to make that payment. As guarantor he doesn't necessarily stand to even receive those shares back. The award does not say that EGI has an obligation to get these shares back to him. The award does not say that it needs to figure out a way to address with if some pay. And he did not go back to the arbitration panel. The award does say that it is for the purchase of the shares. The purchase and the payment of those shares. And it repeatedly says that he is to pay within a certain amount of time. Doesn't a purchase suggest that something is changing hands in both directions? Your Honor, it does. And in the put context, as Judge Shoflat pointed out, we have put those out there for when we are made whole with that payment, that they will take ownership of those under that purchase agreement. That purchase agreement that they breached, they don't honor. My view is that by operation of law, you divested, by putting making the put, you've relinquished the shares. If the claim of a breach prevails. And it did, Your Honor. And that's again why the arbitrator sets forth in the award. You couldn't change your mind and the game's over. And keep the shares. No. And just to be clear, this is what I was trying to get clarification on. I am understanding that then to mean that even if you get a million dollars but you don't get the other 27 million plus, you still can't get the, you still don't have the shares because you put them out there. I mean, I don't know where theoretically they are but, I mean, I think, is that what you're saying, Judge Shoflat? And are you disagreeing with that? I'm saying I my understanding is consistent with Judge Shoflat's, how that actually operates if there's some partial payment under this award in Chile was not addressed by the arbitrator. They did not seek that the arbitrator address that or clarify that. So what the district Well, that's a matter of enforcing the award. That's not, the arbitrator doesn't enforce the award. He doesn't have the power of a court. Agreed, Your Honor. All he can do is make the award. The court does the enforcement. I agree, Your Honor. You're left with what the law provides for means of satisfying the judgment. Yes, Your Honor. And to finish, that's why, again, I would summarize that the arbitrator made clear and Judge Scola accepted as a matter of review of fact that this was a money award. And so with a formula to pay that money that can be done and which we did and then once brought to the U.S. it's converted to dollars under U.S. law. And so if we concluded consistent with what Judge Shoflat's understanding of the meaning of putting the shares out there is, that it doesn't matter how much or how little you get if we reduce this to a judgment, not because it is a judgment if we were to conclude that, that you would not have any shares regardless of the amount that you received from the appellants. You would be okay with that. Your Honor, I'm not sure I totally understand. You have to agree to that because that's part of the bargain. Part of the bargain is, part of the contractual relationship is that if you allege that there's a breach and you put the shares and you win the award of course then you have to enforce it. You have to do that in a judicial forum. The arbitrator can't send the sheriff out or issue writs of execution or hold anybody contempt. You're left with what the law provides as a means for satisfying the award. Do you agree with that? I agree that in the United States we have a money judgment. You got a money judgment and you issue writs of execution and whatever else, other remedies. I agree, Your Honor. The law of the forum provides for collecting a judgment. Yes, I agree, Your Honor. That's exactly what we have here. You run the risk that in this arrangement that the other side could be insolvent. That's just the risk. Yes, we recognize that he may not have $30 million. They could be in bankruptcy for whatever. That's a risk the parties took. Yes, Your Honor. We have a money judgment from him. You have a money judgment and you've got to collect it. Yes, in the United States. That's exactly right. You take the risk of whether you can find the money when you issue the writs of execution and everything else. Yes, Your Honor. Are there any other questions? That's my view of the award. I believe it's a correct view that the award is a money judgment. Which you've got to enforce in a court of law since they won't voluntarily pay. I agree. That's why we're here. Exactly. That's all we want this court to do is affirm that money judgment that we got from Judge Scola that he determined was the correct... The chairs are gone and you're left with what the law provides in terms of executing the judgment. Again, I can't speak to what Chilean law says to that but that's my opinion. Well, I can't imagine Chilean... Well, let's put it this way. Nobody could argue, I submit, that Chilean law says somehow the arbitration panel possesses the judicial powers to enforce the award. I agree, Your Honor. If you were in Chile, you'd take the award and you'd go to the Chilean court. Agreed, Your Honor. And whatever Chilean law, if they allow, for example, the enforcement of a judgment by contempt power, you could have them put in jail until they pay. I assume Chilean law doesn't do that. So you're left with whatever Chilean law, whatever mechanisms they provide for satisfying judgments. Judge Schofield, I don't disagree with anything you say except for that I'm not an expert on those collateral parts of Chilean law. That's all common sense. Understood, Your Honor. All I can say is here in the United States, we have a confirmable award that was done pursuant to U.S. law. We have your case. Thank you, Your Honor. What your brother has in terms of rebuttal. Thank you. They have the shares still and they're still acting as shareholders. Oh, they put the shares up. When they allege the breach and they made a put, they're in effect saying by operation of law, if we prevail on the breach, the shares are gone and we're left to the remedy. Yes, but there's nothing that has transferred the shares to us and there's nothing that Your argument is that the litigation isn't over with before the arbitration panel. That's your argument. Well, that's true. We should reverse the district court and send you back to Chile wherever you're going to have the arbitration. We should because they have gotten an inflated purchase price on these shares. Whatever the case. But I need to stress the fact that yes, they do still have the shares and there's nothing that compels them to turn over the shares. So we're in a situation where they have a windfall. That's a contract matter about turning over the shares. Would you agree that the contract provided as follows? If they make a put and allege a breach and prevail on the breach, the shares are gone by operation of law. Right, and that's what the arbitration award has contemplated, but that is not what has happened. Your argument is there's no award yet. There is no final award, yes. That is exactly what we're saying. And counsel has said himself there were a bunch of issues the arbitrator didn't address, including the fact that he didn't address the disputes that we have in terms of the assumptions they made about the purchase price. Now, even the cases that they cite with respect to the breach day rule and converting foreign judgments in foreign dollars to U.S. dollars, they specifically mention the fact that, hey, this is not an injunction. This is not specific performance. This was specific performance. They want to treat it as a money judgment. And right now there's nothing, and I know Your Honor has said that they've already put the shares, but they hold them. They're still exercising... I don't care whether they hold them or not. By operation of law, they got no interest in them. Okay, but I... Once they prevailed on the that's the contract. Contract says I put them up, I allege a breach, I win, shares are gone. That's right. And back to us. Once there's payment. But we're not at a final arbitration award because we don't have a purchase price and therefore we can't even get to the question of enforcement that you're talking about. But I think that they are going a long way in trying to get all the money judgment for themselves while also keeping the shares. And I know that you say by operation of contract, the shares are gone, but they're keeping them, and they're using them. Now, we think... How are they using them? Well, they're exercising their rights. They're showing up at shareholder meetings. They're making demands as shareholders. That continues. And so, we have... We're in a situation where they have the best of both worlds. You should have just told them, go away. You don't have any shares. We kick you out of the meeting. We'll kick them out of the meeting next time. We'll take that advice. And if I were the Chilean judge, I'd tell them you don't belong in the meeting. Right. Okay. But the fact of the matter is, there's nothing in the judgment that says... We understand your point. This case is not over. That's right. This case is not over, and I think that even my colleague has mentioned there's arbitrable issues remaining. Or to be in recess